REBECCA BROWN, as Guardian ad Litem of HARRIET BROWN, an Infant, and JOSEPH BROWN, Respondents, v. BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

First Department, February 11, 1938.

*Arthur Bainbridge Hoff* of counsel [*Paxton Blair* and *Harlan E. Cecil* with him on the brief; *Paul Windels, Corporation Counsel*], for the appellant.

*Ellis J. Bisgyer* of counsel [*Julius S. Berg*, attorney], for the respondents.

DORE, J. On permission granted by this court defendant Board of Education of the City of New York appeals from an affirmance

by the Appellate Term of a judgment of the City Court, Bronx County, in plaintiffs' favor in the sum of $1,607.10 after a trial before the court and a jury.

The action is predicated on injuries the infant plaintiff claimed to have suffered through the alleged negligence of defendant when, on February 23, 1934, in the yard of the public school she attended, she slipped and fell on a path which, she claimed, was at the time covered with ice and dangerous, of which dangerous condition defendant had notice. A second cause of action predicated on the same negligence was alleged by the infant's father for the sum of $250 claimed to have been expended on behalf of the infant in an endeavor to cure her of the injuries thus sustained.

The infant plaintiff, hereinafter referred to as " plaintiff," was at the time of the accident thirteen years of age and at the time of trial about sixteen. Her testimony was that about twenty minutes to nine on the morning of February 23, 1934, she was walking between two schoolmates along a path in the school yard; that the path had been made in the snow which covered the entire yard; that it had ice on it and some ashes, and that she slipped and fell on a spot in the path where the ice was not covered with ashes. Plaintiff and her witnesses admitted that there were ashes on the path and one of her witnesses testified that ashes were put on the path every morning.

Defendant's witnesses, the acting assistant principal of the school, the custodian, his helper, the teacher in charge of the yard, all testified that at the time and place in question ashes were over the entire path from the schoolhouse to the gate. It was also shown that about 450 pupils had entered the school through that particular path on that morning without accident.

The real dispute was whether there was an icy spot not covered by ashes where the plaintiff fell and whether the condition was dangerous and existed because of defendant's negligence, and whether plaintiff was guilty of contributory negligence. Written statements, signed by plaintiff and by one of her witnesses who was also one of her companions at the time of the accident, were introduced in evidence by defendant. These statements were written by plaintiff and her witness on the morning of February twenty-third shortly after the accident. In her own statement plaintiff had admitted that there were ashes scattered on the path and that instead of walking on the ashes she walked ahead on the ice. In view of the testimony in plaintiffs' case at the trial, these contemporaneous written statements, which a regulation of the board of education required to be taken, were very important. Plaintiff and her witnesses claimed that the sense of these statements

had been dictated by one of the teachers at the time they were written, while the teacher whose duty it was to report accidents and the other teachers and clerks present in the office at the time testified there had been no direction whatever to plaintiff or the girls with her as to what they should write.

It is apparent from the weather reports in evidence that February, 1934, was an unusually cold and stormy month. Only on two of the days prior to the twenty-third was the mean temperature above freezing and on those days, the nineteenth and twenty-second, the mean temperatures were thirty-four and thirty-five degrees respectively. There were substantial snow falls, nine and six-tenths inches on the first, five and eight-tenths inches on the nineteenth, three and four-tenths inches on the twentieth. There was rain on the twenty-second and on the early morning of the twenty-third. The deposit of snow on the ground on the twenty-first was eight inches; on the twenty-second, six; on the twenty-third, five and three-tenths. At seven o'clock on the morning of the twenty-third, the day of the accident, the temperature was twenty-seven, and between eight and nine o'clock twenty-six to twenty-three. The issues as to defendant's negligence and plaintiff's contributory negligence were very close.

In that state of the record the trial justice repeatedly questioned defendant's witnesses to such an extent and in such manner as to indicate clearly that he disbelieved them and disapproved of what they had done in taking the statements. The court questioned the teacher who had charge of reporting accidents whether the children in public schools are taught sympathy, kindness, consideration for others, humanity and charity, and whether she did not think it was a good thing to have sent for an ambulance when the accident happened. Previously the judge had addressed to this witness the following questions:

" The Court: No, the witness is not a doctor, but there is no doubt that the child was in pain. Is there any question about that? Did you observe the child in pain?

" The Witness: The child was in pain.

" The Court: And notwithstanding that she was in pain the first thing that you thought of was a statement?

" Mr. Cecil [Defendant's counsel]: The first thing she said was ' send for the mother.'

" The Court: The mother is not a doctor, is she?

" The Witness: No.

" The Court: Didn't you think under the circumstances that the first thing you should have done was to give her first aid, medical attention?

" Mr. Cecil: May I object to your Honor's questions?

" The Court: Yes, you may object.  You know, after all judges are not machines.

" Mr. Cecil: I understand that, your Honor.

" The Court: They have some feelings in the matter too.

" Mr. Cecil: I understand that, and I would like to take an exception to your Honor's attitude and the manner in which your Honor is asking the questions."

This type of questioning had been started by the trial justice earlier in the trial.  Thus when plaintiff was testifying the court saw fit to ask her whether they had sent for an ambulance and whether there was a telephone there and whether she was· at the time in pain.  The trial justice further indicated hostility to defendant by his questions in the nature of a cross-examination of the custodian engineer of the building:

" By the Court:

" Q. You say it was physically impossible to remove the ice in this pathway; what do you mean by that?  A. Well, it is very hard to chop ice and remove it.

" Q. Is that the only way of removing ice?  A. That is the only way, with choppers.

" Q. What kind of a chopper do you use?  A. A small chopper with a knife edge; it is about three inches wide. ·

" Q. Haven't you ever removed ice in any other fashion?  A. No other way.

" Q. Have you got steam in your building there?  A. No, it is low·pressure.

" Q. Low pressure steam?  A. Yes; we only carry about two pounds in the heating system.

" Q. Have you ever removed ice by the use of steam?  A. No, your Honor.

" Q. You never have?  A. No."

This series of questions by the justice presiding might well have been an indication to the jury that he considered the use of steam for the removal of ice.the usual, customary and the only proper method under the circumstances and that if defendant did not use steam it might be held liable for negligence.  There were other equally·prejudicial questions which it is unnecessary here to repeat, the effect of which was to indicate to the jury that the court believed defendant was negligent and that the statements above referred to were, as plaintiff claims, dictated by the defendant's employees in order to exculpate defendant from liability. Indeed, the court states this in one part of his charge as follows: " Now, after the accident to the plaintiff the plaintiff was carried

upstairs to the principal's office or to an office, and although suffering extreme pain from a fractured ankle, was subjected to questioning, and a statement taken from this child in an attempt by the defendant's employees to exculpate the defendant from liability for this accident. No ambulance was sent for and no doctor was called to alleviate the suffering of this child. It is for you to consider whether this statement taken in the manner in which it has been described to you, has any probative force or is of any value at all." General language in other parts of the charge that these were questions of fact for the jury to review could not remedy the harm done, especially after a charge as to contributory negligence which was in part as follows: "Now let us analyze the statement of the plaintiff and see wherein this child is guilty of contributory negligence. She was rightfully on the premises. This was a school building. She had a right to walk on the path, and it is for you to say whether she deliberately went on the ice to hurt herself or whether she was hurt while walking on the pathway by reason of the existence of the ice." This language might well indicate to the jury that the plaintiff was not guilty of contributory negligence unless she "deliberately" stepped on the ice and purposely injured herself.

The case presented the usual simple issues in the average negligence action and could have been disposed of in a short time. Instead it dragged on for three days by reason of the fact that it was very much over tried by both sides. From an examination of the entire record we can well understand that the patience of the court was severely tried. Nevertheless we consider that the questions and remarks to which we have referred and others which we deem it unnecessary specifically to mention constituted materially prejudicial error and require a reversal and a new trial.

The determination appealed from and the judgment of the City Court should be reversed and a new trial ordered, with costs in all courts to the appellant to abide the event.

MARTIN, P. J., O'MALLEY and UNTERMYER, JJ., concur; GLENNON, J., concurs in result.

Determination of the Appellate Term and judgment of the City Court unanimously reversed and a new trial ordered, with costs in all courts to the appellant to abide the event.